UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WINNIFRIED NOEL CHARLES,                    :

                       Plaintiff,         :

                                :

           -against-                :

MICHAEL CHERTOFF, Secretary of the
Department of Homeland Security, in his official     :
capacity, ENRICA TROY, MARY ANN
GANTNER, and the DEPARTMENT OF          :
HOMELAND SECURITY,

                                :

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ECF CASE

No. 07 Civ. 8324 (JSR) (THK)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT,
OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Attorney for Defendants
86 Chambers Street
New York, NY 10007
Tel.: (212) 637-2785
Fax: (212) 637-2750
E-mail: joseph.pantoja@usdoj.gov

JOSEPH A. PANTOJA
Assistant United States Attorney
– Of Counsel –

TABLE OF CONTENTS

Page

Preliminary Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.      Plaintiff's Employment at DHS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B.      Plaintiff's Applications for Promotions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        1.      The Application Process. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        2.      Vacancy Announcement No. FS-330054.. . . . . . . . . . . . . . . . . . . . . . . . . 6

        3.      Vacancy Announcement No. CIS-101146-NYC. . . . . . . . . . . . . . . . . . . . 7

        4.      Vacancy Announcement No. CIS-103847-NYC. . . . . . . . . . . . . . . . . . . . 10

C.      EEO Proceeding Underlying This Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

POINT I:        CERTAIN OF PLAINTIFF'S DISCRIMINATION CLAIMS SHOULD
                BE DISMISSED FOR FAILURE TO STATE COGNIZABLE
                CLAIMS AND LACK OF SUBJECT MATTER JURISDICTION. . . . . . . . . . . 12

A.      Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

B.      Plaintiff's State-Law Discrimination Claims
        Are Preempted by Title VII. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

C.      Michael Chertoff, Secretary of DHS, Is the
        Only Proper Defendant under Title VII. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

POINT II:       THERE IS NO TRIABLE ISSUE OF FACT PRECLUDING
                SUMMARY JUDGMENT ON PLAINTIFF'S
                TITLE VII CLAIMS AGAINST CHERTOFF. . . . . . . . . . . . . . . . . . . . . . . . . 14

A.      Summary Judgment Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

B.      Legal Framework for Plaintiff's
        Discrimination Claims under Title VII. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

C.      Regulatory Framework.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

D.      All Claims as to Which Plaintiff Has Failed to

Exhaust Her Administrative Remedies Should Be Dismissed. . . . . . . . . . . . . . . . . . . . . . 17

  1.    Plaintiff Failed Timely to Seek EEO Counseling
        in Connection with Her Failure-to-Promote Claims. . . . . . . . . . . . . . . . . . . . . . . 17

  2.    Plaintiff Failed Timely to Commence this Action. . . . . . . . . . . . . . . . . . . . . . . . . 18

E.   Plaintiff Cannot Make Out a Prima Facie Case of Discrimination. . . . . . . . . . . . . . . . . . 20

F.   Defendant Has Proffered Legitimate, Nondiscriminatory
     and Non-retaliatory Reasons for His Actions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

POINT III:    THIS COURT LACKS SUBJECT MATTER
              JURISDICTION OVER PLAINTIFF'S FOIA CLAIM.. . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

TABLE OF AUTHORITIES

Page

*Cases*

 *American Fed'n of Gov't Employees v. U.S. Dep't of Commerce*,
        907 F.2d 203 (D.C. Cir.1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Anderson v. Leavitt*, No. 03-6115 (DRH),
        2007 WL 2874838 (E.D.N.Y. Sept. 27, 2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Anderson v. Liberty Lobby, Inc.*,
        477 U.S. 242 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067 (2d Cir. 1993). . . . . . . . . . . . . . . . . . . . 14

*Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152 (1994). . . . . . . . . . . . . . . . . . . 17

*Belgrave v. Pena*, 254 F.3d 384 (2d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Bell Atlantic Corp. v. Twombly*, _ U.S. _, 127 S. Ct. 1955 (2007). . . . . . . . . . . . . . . . . . . . . . . 13

*Bickerstaff v. Vassar College*, 196 F.3d 435 (2d Cir. 1999),
        *cert. denied*, 530 U.S. 1242 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 20

*Blackburn v. Eli Lilly and Co.*, No. 99 Civ. 0722,
        1999 WL 1125048 (N.D.N.Y. Dec. 1, 1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Briones v. Runyon*, 101 F.3d 287 (2d Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-18

*Brown v. General Services Admin.*, 425 U.S. 820 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

*Bruce v. United States Department of Justice*, 314 F.3d 71 (2d Cir. 2002).. . . . . . . . . . . . . . . . 17

*Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29 (2d  Cir. 1994). . . . . . . . . . . . . . . . . . . . 15, 20

*Cohen v. Federal Exp. Corp.*, — F. Supp. 2d — , Nos. 06 Civ. 482 ,
        07 Civ. 1288 (RJH)(THK), 2008 WL 857432 (S.D.N.Y. Mar. 31, 2008).. . . . . . . . . . 19-20

*Dawson v. Drug Enforcement Administration New York Field Division*,
        No. 00 Civ. 5887 (JSR)(REL), 2002 WL 418022 (S.D.N.Y. Mar. 14, 2002). . . . . . . . . . . 24

*Drayton v. U.S. Dep't of Veterans Affairs*,
        654 F. Supp. 558 (S.D.N.Y. 1987).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Goenaga v. March of Dimes*, 51 F.3d 14 (2d Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Gorman v. Consolidated Edison Corp.*, 488 F.3d 586 (2007)............................. 13

*Graham v. Long Island R.R.*, 230 F.3d 34 (2d Cir. 2000)............................. 20-21

*Graphics of Key West, Inc. v. United States*, No. CV-N-93-718-ECR,
    1996 WL 167861 (D.Nev. Feb. 5, 1996)....................................... 24

*Haji v. Bureau of Alcohol, Tobacco, Firearms and Explosives*,
    No. 03 Civ. 8479 (DC), 2004 WL 178625 (S.D.N.Y. Aug. 10, 2004) ............... 25

*Healy v. U.S. Postal Service*, 677 F. Supp. 1284 (E.D.N.Y. 1987)......................... 14

*Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990)................................. 17

*Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143 (2d Cir. 1984).................... 19

*Kessler v. United States*, 899 F. Supp. 644 (D.D.C. 1995).............................. 24

*Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243 (2d Cir. 2002)......................... 14

*Major Oldsmobile, Inc. v. General Motors Corp.*, 93 Civ. 2189 (NRB),
    1995 WL 326475 (S.D.N.Y. May 31, 1995).................................. 19

*Maloney v. Cuomo*, 470 F. Supp. 2d 205 (E.D.N.Y. 2007).............................. 12

*Marshall v. Nat'l Assoc. of Letter Carriers*, Nos. 00 Civ. 3167 (LTS),
    01 Civ. 3086 (LTS), 2003 WL 223563 (S.D.N.Y. Feb. 3, 2003). .................... 13

*Matthews v. U.S. Postal Service*, 87-CV-1282,
    1989 WL 14684 (N.D.N.Y. Feb. 23, 1989)................................... 14

*McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973)............................... 15

*Meiri v. Dacon*, 759 F.2d 989 (2d Cir. 1985). .................................... 15

*Mitchell v. Kemp*, No. 91 Civ. 2983 (RWS), 1992 WL 188355 (July 27, 1992),
    *aff'd*, 999 F.2d 536 (2d Cir. 1993) (Table). .................................. 25

*National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). .................. 16, 18

*Nelson v. Ashcroft*, No 00 Civ. 9485 (AKH),
    2003 WL 22004884 (S.D.N.Y. Aug. 22, 2003)................................ 19

*Powell v. Nat'l Bd. of Med. Exam'rs*,
    364 F.3d 79 (2d Cir. 2004)............................................. 14

*Randall v. Potter*, 01 Civ. 2097 (THK),
    2004 WL 439491 (S.D.N.Y. Mar. 9, 2004)................................... 13

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)..................... 15-16

*Reith v. Internal Revenue Service*, Civ. No. F 80-87,
    1980 WL 1659 (N.D. Ind. Sept. 10, 1980)................................... 24

*Rivera v. Heyman*, 157 F.3d 101 (2d Cir. 1998)...................................... 13

*Sherlock v. Montefiore Medical Center*, 84 F.3d 522 (2d Cir. 1996)................... 19

*Simonton v. Runyon*, 232 F.3d 33 (2d Cir. 2000)..................................... 15

*South v. Saab Cars USA, Inc.*, 28 F.3d 9 (2d Cir. 1994).............................. 18

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993)................................ 22

*Toolan v. Board of Ed.*, 02 Civ. 6989, 03 Civ. 576,
    2003 WL 22015437 (S.D.N.Y. Aug. 25, 2003)................................ 19

*United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136 (1989)................ 23

*White v. Loury*, Civ. No. C78-144, 1978 WL 4499 (N.D. Ohio May 30, 1978)............. 24

*Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123 (2d Cir. 2004)..................... 15

*Woodman v. WWOR-TV, Inc.*, 411 F.3d 69 (2d Cir. 2005).............................. 15-16

<u>Statutes</u>

5 U.S.C. § 552.................................................................... 1

5 U.S.C. § 552(a)(3)(A).......................................................... 23

42 U.S.C. §§ 2000e *et seq*....................................................... 1

42 U.S.C. § 2000e-16(a).......................................................... 15

42 U.S.C. § 2000e-16(c)...................................................... 13, 17, 19

<u>Regulations</u>

5 C.F.R. §

6 C.F.R. § 5.3(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

6 C.F.R. § 5.3(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

6 C.F.R. § 5.9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

29 C.F.R. § 1614.105(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

29 C.F.R. § 1614.106(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

29 C.F.R. § 1614.106(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

29 C.F.R. § 1614.110. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## *Rules*

Fed. R. Civ. P. 6(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Fed. R. Civ. P. 12(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 25

Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 25

Fed. R. Civ. P. 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 25

Fed. R. Civ. P. 56(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Defendants Michael Chertoff, in his official capacity as Secretary of the Department of

Homeland Security, and the Department of Homeland Security ("DHS"); and Enrica Troy and Mary

Ann Gantner,[1] in their official capacities as current and former employees of DHS, respectively

(collectively, "Defendant"), by their attorney, Michael J. Garcia, United States Attorney for the

Southern District of New York, respectfully submit this memorandum of law in support of their

motion to dismiss the Amended Complaint, or in the alternative, for summary judgment pursuant to

Rules 12(b)(1), 12(b)(6), and 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff Winnifried Charles ("plaintiff"), a former employee of DHS, alleges claims of

discrimination on the basis of race and national origin against Defendant pursuant to Title VII of the

Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e *et seq*., as well as under

New York law.  Plaintiff also claims that Defendant violated the Freedom of Information Act, 5

U.S.C. § 552 ("FOIA"), in connection with requests for information concerning one of her non-

selections for a promotion.  For the following reasons, the Amended Complaint should be dismissed

in its entirety.

Plaintiff's discrimination claims (first count of the Amended Complaint) should be dismissed

because plaintiff failed timely to seek EEO counseling after learning of her non-selection for the

positions at issue, and has alleged no basis for tolling of the applicable deadline.  Plaintiff also failed

timely to file the current action in district court after the United States Equal Employment

Opportunity Commission ("EEOC") denied her request for reconsideration of the denial of her

appeal of DHS's dismissal of her administrative complaint, which is an additional, independent basis

for dismissal of her discrimination claims.  Plaintiff's claims pursuant to the New York State Human

---

[1] Ms. Gantner is deceased.  No defendant has been substituted for her in this action
because she is not a proper party to this action.  *See* discussion, *infra*, Point I.C.

Rights Law and the New York City Human Rights Law should be dismissed because Title VII

provides the exclusive remedy for alleged discrimination in the course of federal employment.  As

Michael Chertoff, Secretary of DHS, is the only proper defendant for claims of employment

discrimination against DHS, any claims of discrimination against DHS and its individual employees

must be dismissed.

Alternatively, even viewing the record in the light most favorable to plaintiff, Defendant is

entitled to summary judgment on plaintiff's discrimination claims because she cannot make out a

*prima facie* case of discrimination under Title VII.  Further, even assuming plaintiff could make out

a *prima facie* case of discrimination, plaintiff cannot show that DHS's legitimate, non-discriminatory

reasons for its actions were a pretext for unlawful discrimination.  Accordingly, plaintiff's

discrimination claims should be dismissed in their entirety.

Plaintiff's FOIA claim should be dismissed for lack of subject matter jurisdiction on account

of her failure to exhaust her administrative remedies.  Specifically, plaintiff's request did not ask for

agency records and was misaddressed to another agency.  In any event, even if plaintiff's request had

complied with FOIA and DHS's FOIA regulations, her request was rendered moot by Defendant's

document production during discovery in this case.

For these reasons, the Amended Complaint should be dismissed in its entirety.

## BACKGROUND

### A.    Plaintiff's Employment at DHS

Plaintiff is a "Trinidadian American and an African American."  Am. Compl. ¶ 29.  In

October, 1998, plaintiff was hired as a District Adjudication Officer ("DAO"), grade 5, at the Garden

City, New York, office of the former Immigration and Naturalization Service, which was part of the

Department of Justice at the time.  *See* Declaraton of Joseph A. Pantoja ("Pantoja Decl.") Ex. 12

(deposition of plaintiff) ("Pl. Tr.") at 13-14, 76-77; Declaration of Gwynne MacPherson

("MacPherson Decl.") ¶ 3.  That position had a promotion potential of grade 12.  Pl. Tr. 14-15; MacPherson Decl. ¶ 3.  In 2000, plaintiff received a transfer to the New York District Office located at 26 Federal Plaza, New York, so that she could be closer to home.  *See* Pl. Tr. at 23.  In 2003, plaintiff was part of a mass transfer of DAOs to the newly created DHS.  Pl. Tr. at 76-78.  Plaintiff worked as a DAO in the New York office of DHS, Citizenship and Immigration Services ("CIS"), until September 7, 2006, when she voluntarily resigned to participate in an internship with the New York State Unified Court System.  Pl. Tr. at 91-92; MacPherson Decl. ¶ 4.

From late 2003 until plaintiff resigned in 2006, Enrica Troy ("Troy"), who was a Supervisory DAO ("SDAO") at the time, was plaintiff's immediate supervisor in the Naturalization Section.  Pl. Tr. at 36-39, 57-58; Pantoja Decl. Ex. 13 (deposition of Troy) ("Troy Tr.") at 6-9; MacPherson Decl. ¶ 5.  During her employment as DAO, plaintiff received promotions and within-grade step increases, and the highest grade and step she attained prior to her resignation was grade 12, step 4.  Pl. Tr. at 58, 71-75; MacPherson Decl. ¶ 6.  Plaintiff attended law school at night from 2001 to 2006, obtained her law degree, and passed the New York State bar in 2006.  Am. Compl. ¶ 17; MacPherson Decl. ¶ 7.

**B.      Plaintiff's Applications for Promotions**

The hierarchy of non-district level positions in the New York District Office range from DAO to various levels of Supervisory District Adjudications Officer, also known as Supervisory Adjudications Officer (both hereinafter referred to as "SDAO") as follows:  DAO, the grades for which ranged from 5 to 12; SDAO, a grade13 first-level supervisory position; Site Manager, which is technically a grade 14 SDAO position; and Section Chief, a grade 14 SDAO position, followed by district-level management positions.  Pl. Tr. at 29-30, 200-01; MacPherson Decl. ¶ 8 and Ex. A (position description for SDAO).

3

The Tri-Bureau Merit Promotion Plan ("Merit Plan") effective March 7, 2005, sets forth the policy for implementing competitive merit selection procedures within ICE, United States Customs and Border Protection, and United States Immigration and Customs Enforcement.  *See* MacPherson Decl. ¶ 9 and Ex. B (Merit Plan).  Under the Merit Plan, vacancy announcements may be issued to establish a pool of applicants, and certificates identifying eligible candidates may be issued up to one year after the closing date of the announcement.  *See* MacPherson Decl. ¶ 9 and Merit Plan at US 2653.  Vacancy announcements must be publicized on the Office of Personnel Management's ("OPM's") USAJOBS web site.  *See* MacPherson Decl. ¶ 9 and Merit Plan at US 2653.

    **1.     The Application Process**

The application process is largely automated and conducted on-line through CareerFinder in accordance with the procedures set forth in the vacancy announcement.  *See* MacPherson Decl. ¶ 10 and Merit Plan at US 2653.  The Merit Plan requires that candidates "be evaluated for positions and receive a rating based on their job-related knowledge, skills, and abilities," which evaluation may be based on "one or more" specified evaluation methods, including:  (1) answer to job-related questions; (2) job-related/occupational tests; (3) narrative responses to job knowledge, skill, ability or competency; (4) structured interviews; and (5) other approved assessment instruments meeting certain conditions of relevance and fairness.  *See* Merit Plan at US 2655.  Based on the evaluation, each applicant receives a rating based on a total possible score of 100 points, and the minimum qualifying score is 70 points.  *See* Merit Plan at US 2655.  The rating and ranking of applicants is a computer-generated process based on the answers given to the job-specific questionnaires and other information forming part of the application.  *See* MacPherson Decl. ¶ 10.  The candidates determined to be best qualified are referred to the selecting official.  *See* Merit Plan at US 2655.

"Selecting officials may choose *any* applicant referred on the best-qualified list," and "may select from those referred as best qualified and/or alternate staffing." Merit Plan at US 2656 (emphasis added). Applicants for whom competitive procedures do not apply, such as alternate staffing candidates, including lateral transfers, "may be considered and referred, in a separate category, for selection consideration in alphabetical order, provided they meet the basic qualification and eligibility requirements, along with those referred as best qualified, *see* Merit Plan at US 2655; and "[a]lternate staffing candidates, or candidates from any other appropriate source, may be selected at any time in the process of filling a position," *id.* at US 2656. "If, within 120 days of the issuance of the initial selection list, additional vacancies covered by the same official position description, location, and organization occur, applications from the previous announcement may be used for certification for these positions." *Id.* at US 2657.

The use of interviews in connection with the filling of vacancies is entirely optional, at the discretion of the selecting officials or their designees. *See* Merit Plan at US 2655-56. During 2005 and 2006, Gwynne MacPherson ("MacPherson") was the Field Office Director for the New York District Office, which was headed by District Director Mary Ann Gantner ("Gantner"). *See* MacPherson Decl. ¶ 13. Gantner did not require any interviews, and generally interviews were not conducted in connection with vacancy announcements issued during 2005 and early 2006. *Id.*

MacPherson was the selecting official for SDAO vacancies during 2005 and 2006. *See* MacPherson Decl. ¶ 14. After Human Resources in Vermont prepared the certificate of eligibles, the certificate would have been circulated for vetting and recommendations among the Section Chiefs for the sections in which the vacancies existed. *Id.* ¶ 15. After that process, MacPherson would receive a certificate of eligibility and recommendations, and she would generally concur with reasonable recommendations for selections unless she had a specific reason not to do so. *Id.* ¶ 16.

5

Troy, who was not even aware that plaintiff had applied for promotions during 2005 and 2006, had no involvement in any of the vacancies to which plaintiff applied prior to her resignation. *See* Troy Tr. at 91-93.

### 2.    Vacancy Announcement No. FS-330054

In May, 2005, plaintiff, as a grade 12 DAO in the New York office, applied to Vacancy Announcement No. FS330054 ("FS330054"), which advertised a "few" SDAO, GS-1801-13/14, vacancies in CIS's New York office, among other offices. *See* Am. Compl. ¶ 18; MacPherson Decl. ¶ 17 and Ex. C (announcement) and Ex. D (plaintiff's Optional Form 612). The SDAO position advertised in FS330054 was a grade 13/14 with a promotion potential of grade 14, and candidates, depending on their work experience, could qualify at the grade 13 or 14 level. *See* MacPherson Decl. ¶ 18 and Ex. C at US 1249-51. There were no interviews conducted in connection with FS330054, and there was no specialized education requirement. *See* MacPherson Decl. ¶ 19 and Ex. C at US 1249-51. Plaintiff was qualified at the grade 13 level. *See* MacPherson Decl. ¶ 20.

The selectees for FS330054 were James Tu ("Tu") and Stephen Rosina ("Rosina"). *See* MacPherson Decl. ¶ 21 and Ex. E (Tu's application), Ex. F (Rosina's application). Tu had been working as an Acting Section Chief, grade 13, continuously since January, 2005. *See* MacPherson Decl. ¶ 21 and Ex. E at US 1276, 1284. From October 3, 2004, to January, 2005, Tu also worked as a Temporary Section Chief, a grade 14 position, and prior to that he had been a grade 13 SDAO since 1999. *See id.* ¶ 21 and Ex. E at US 1275-1277. Rosina had been continuously working as a Temporary Section Chief, a grade 14 position, since April 2005, prior to which he had been a grade 13 SDAO since 1995. *See* MacPherson Decl. ¶ 21 and Ex. F at US 1242. Tu and Rosina were both qualified for FS330054 at the grade 14 level. *See* MacPherson Decl. ¶ 21 and Ex. C at 1249-51. Tu

and Rosina are currently Section Chiefs in the New York District Office.  *See* MacPherson Decl.

¶ 21.

During the summer of 2005, plaintiff received an e-mail advising that selections had been

made for FS330054 and that the selectees had already been notified.  *See* MacPherson Decl. ¶ 22; Pl.

Tr. at 94 ("I have no information that selections were made besides an e-mail back and forth to the

Vermont human resources that said selections were made and selectees were notified.") and at 102-

04 (explaining that plaintiff received the referenced e-mail in Summer 2005).

By letter dated August 30, 2005, plaintiff allegedly wrote a letter to the Office of Personnel

Management ("OPM") in California requesting with respect to FS330054, ostensibly pursuant to

FOIA:  "1.  My evaluation and ranking; 2. If my name was placed on the hiring list; 3. Whether or

not I was referred to the hiring agency; 4. The evaluation criteria used to determine eligibility for this

announcement; and 5. The qualifications of those individuals who made the hiring list and of those

referred to the hiring agency."  Pantoja Decl. Ex. 1, first page.  Plaintiff allegedly wrote a follow-up

letter to OPM dated November 2, 2005.  *See* Pantoja Decl. Ex. 1, second page.  OPM is not part of

DHS, and CIS has no record of having received a request from plaintiff dated 2005 concerning

FS330054.  *See* Declaration of Jill A. Eggleston ("Eggleston Decl") ¶ 5.  FOIA and Privacy Act

requests for human resources information involving CIS should be sent to Customs and Border

Protection, Burlington Human Resources Office, 70 Kimball Avenue, South Burlington, Vermont

05403-6813, the same address was in effect during 2005.  *See id.* ¶ 4.

### 3.    Vacancy Announcement No. CIS-101146-NYC

In November, 2005, plaintiff applied to Vacancy Announcement No. CIS-101146-NYC

("CIS-101146-NYC"), which advertised three SDAO GS-1801-13 vacancies in CIS's New York

office.  *See* Pl. Tr. at 104-05; MacPherson Decl. ¶ 23 and Ex. G (announcement) and Ex. H

(plaintiff's Optional Form 612 and responses to job-specific questionnaire). The SDAO position advertised in CIS-101146-NYC was a grade 13 position with no promotion potential beyond that grade. *See* MacPherson Decl. ¶ 24 and Ex. G at US 298. Plaintiff was qualified for CIS-101146-NYC. *See* MacPherson Decl. ¶ 23 and Ex. G at US 299. There were no interviews conducted in connection with CIS-101146-NYC, and there was no specialized education requirement. *See* MacPherson Decl. ¶ 25 and Ex. G at US 299. The three vacancies that were filled through CIS-101146-NYC were in sections headed by Rosina, Section Chief, Adjustment of Status, and John Ryan ("Ryan"), Section Chief, Adjudications 2. *See* MacPherson Decl. ¶ 26. Initially, only two selections were made as the third vacancy was not yet ready to be filled. *Id.* MacPherson initially selected Monica Toro ("Toro") and Nancy Faria ("Faria") for CIS-101146-NYC, followed by Terri Williams ("Williams") shortly thereafter. *Id.*; Pl. Tr. at 122-23.

On December 22, 2005, Rosina recommended Toro for one of the permanent SDAO vacancies under CIS-101146-NYC based on the quality of Toro's work as a Temporary SDAO since September, 2005, including the influence she had on trainees under her charge. *See* MacPherson Decl. ¶ 27 and Ex. I (recommendation) and Ex. J (Toro's resume and responses to job-specific questionnaire). Based on Toro's supervisory experience in the section in which the vacancy was located, MacPherson concurred with Rosina's recommendation. *See* MacPherson Decl. ¶ 28. On December 27, 2005, MacPherson selected Toro for CIS-101146-NYC from Merit Promotion Certificate of Eligibles No. MB-06-REP-01176S0, which had issued on December 6, 2005. *See* MacPherson Decl. ¶ 28 and Ex. K (certificate reflecting selection).

On December 22, 2005, Ryan recommended Faria for the position of SDAO in the Refugee and Parole Unit based on her "extensive knowledge of the work and personnel" in that Unit, which was the result of her having spent a few years in that Unit as a DAO as well as serving as Temporary

8

SDAO there since July 2005. MacPherson Decl. ¶ 29 and Ex. L (recommendation), Ex. M (Faria's resume) and Ex. N (Faria's responses to job-specific questionnaire). Faria was a grade 13 DAO with 18 years of experience with the agency and had served as SDAO from February 25, 2000, through February 27, 2001; a Temporary SDAO from July 10, 2005, through November 10, 2005; as well as an Acting Supervisory Asylum Officer, prior to applying to CIS-101146-NYC. *See* MacPherson Decl. ¶ 30 and Ex. L, Ex. M at US 317-18, and Ex. N at 135-136. Based on Faria's extensive supervisory experience and prior experience in the section in which the vacancy existed, MacPherson concurred with Ryan's recommendation. *See* MacPherson Decl. ¶ 31. On December 27, 2005, MacPherson selected Faria, who was already a permanent grade 13 DAO at the time of her application to CIS-101146-NYC, from the Non-Traditional Certificate of Eligible No. MB-06-REP-01177S0, which had issued on December 6, 2005. *See* MacPherson Decl. ¶ 31 and Ex. O (certificate). In December, 2005, plaintiff received an e-mail informing her of her non-selection for CIS- 101146-NYC, which was followed by a letter dated January 9, 2006. *See* Pl. Tr. at 116-118.

Initially, Williams, like plaintiff, was not selected for CIS-101146-NYC. *See* MacPherson Decl. ¶ 32 and Ex. P (non-selection letter issued to Williams), Ex. Q (non-selection letter issued to plaintiff) and Ex. S (certificate reflecting non-selection of Williams and plaintiff) at US 90. Shortly after Toro and Faria had been selected, Rosina had an additional vacancy in his section that was ready to be filled, and he was asked for another recommendation. *See* MacPherson Decl. ¶ 33. On January 9, 2006, Rosina recommended that Williams be selected from the existing applicant pool for CIS-101146-NYC, but without providing the usual narrative explaining his selection. *See* MacPherson Decl. ¶ 33 and Ex. T (recommendation); *see also* Merit Plan at US 2657. MacPherson agreed with Rosina's recommendation of Williams because she knew that Williams had been working in Rosina's section as a grade 13 Temporary SDAO since September, 2005, and already had

9

supervisory experience in the very position to which she was selected; thus, MacPherson had no

reason to disturb Rosina's determination of who would be best suited to join his section as SDAO.

*See* MacPherson Decl. ¶ 33 and Ex. R (William's resume and responses to job-specific

questionnaire) at US 228, 231-32.

By letter dated December 30, 2005, to CIS Human Resources in Vermont, plaintiff requested,

ostensibly pursuant to FOIA, information relating to CIS-101146-NYC. *See* Pantoja Decl. Ex. 2  at

US 2648.  By letter dated January 5, 2006, CIS acknowledged receipt of the December 30, 2005

request.  *See* Pantoja Decl. Ex. 3.  By letter dated May 30, 2006, CIS produced responsive documents

to plaintiff and advised her of her right to appeal CIS's response.  *See* Pantoja Decl. Ex. 4.  Plaintiff

acknowledges that she received documents in response to her December 30, 2005 request, and

plaintiff never appealed CIS's response to her FOIA request concerning CIS-101146-NYC.  *See* Pl.

Tr. at 122, 156-159, 282-84.  By letter dated June 26, 2006, to CIS Human Resources in Vermont,

plaintiff requested additional information, to which CIS responded by e-mail dated August 11, 2006.

*See* Pantoja Decl. Exs. 5 and 6, respectively.

**4.    Vacancy Announcement No. CIS-103847-NYC**

In January, 2006, plaintiff applied to Vacancy Announcement No. CIS-103847-NYC

("103847"), which advertised one temporary SDAO GS-1801-13 vacancy in CIS's New York office.

*See* Pl. Tr. at 137-38; MacPherson Decl. ¶ 34 and Ex. U (announcement) and Ex.V (plaintiff's

application materials).  The SDAO position advertised in CIS-103847-NYC was a temporary grade

13 assignment not to exceed one year that could have been extended for one additional year, and it

was located in the Non-Immigration Unit of the Adjudications 2 section, which was headed by Ryan.

 *See* MacPherson Decl. ¶ 35 and Ex. U at US 81.  There were no interviews conducted in connection

with CIS-103847-NYC, and there was no specialized education requirement. *See* Ex. U at US 81-87.

On February 6, 2006, Ryan recommended that Colvin Alman ("Alman") be selected as a Temporary SDAO in the Non-Immigration Unit, which was in Ryan's section. *See* MacPherson Decl. ¶ 36, Ex. W (recommendation) and Ex. X (Alman's resume). Based on, *inter alia*, Alman's experience in the Unit as a DAO, from 1998 to 2005, and a grade 13 Temporary SDAO since November, 2005, MacPherson concurred with Ryan's recommendation. *See* MacPherson Decl. ¶ 36. On February 8, 2006, MacPherson selected Alman for CIS-103847-NYC off of Merit Promotion Certificate of Eligibles MB-06-REP-01513S0, which had issued on February 2, 2006. *See* MacPherson Decl. ¶ 36 and Ex. Y (certificate reflecting selection) at US 90.

Plaintiff first learned of her non-selection for CIS-103847-NYC through an e-mail she received in January, 2006. *See* Pl. Tr. at 147; MacPherson Decl. ¶ 37. Plaintiff also received a letter dated February 21, 2006, notifying her of her non-selection for CIS-103847-NYC. Pl. Tr. at 146-147; MacPherson Decl. ¶ 37 and Ex. Z. Plaintiff did not make a FOIA request specific to CIS-103847-NYC. *See* Pl. Tr. at 284.

**C.    EEO Proceeding Underlying This Action**

On June 26, 2006, plaintiff sought EEO counseling with respect to all three of her non-selections. *See* Pl. Tr. at 208-09; *see also* Pantoja Decl. Ex. 7 (EEO Report) at US 6. During the counseling phase, plaintiff alleged that she had been discriminated against on the basis of national origin when she was not selected for FS330054, 101146, and 103847. *See* Pantoja Decl. 7 at US 8. By letter dated September 5, 2006, plaintiff received notice of her right to file a written EEO complaint. *See* Pl. Tr. at 213; Pantoja Decl. Ex. 7 at US 11, 14-19. Plaintiff filed her EEO complaint on October 5, 2006, alleging discrimination on account of her national origin and race

11

when she was not selected for FS330054, CIS-101146-NYC, and CIS-103847-NYC.  *See* Pantoja

Decl. Ex. 8.

By decision dated December 29, 2006, DHS denied plaintiff's EEO complaint, finding that

her discrimination claims were untimely on account of her failure to contact an EEO counselor

within 45 days of learning of the three non-selections.  *See* Pantoja Decl. Ex. 9.  Plaintiff appealed to

the EEOC, and the EEOC affirmed the DHS's decision on April 5, 2007.  *See* Pantoja Decl. Ex. 10.

Plaintiff requested consideration of the EEOC's decision, and the EEOC denied that request in a

decision dated June 19, 2007, which was mailed to plaintiff on that date, a Tuesday.  *See* Pantoja

Decl. Ex. 11.  The EEOC's decision advised plaintiff that she had "ninety (90) calendar days from

the date that you receive this decision" to file a civil action.  *Id.*

Plaintiff filed this action on September 24, 2007, a Monday, and amended her complaint on

February 28, 2008.  The Amended Complaint alleges claims of employment discrimination pursuant

to Title VII, the New York State Human Rights Law, and the New York City Human Rights Law,

and also a FOIA claim alleging that DHS failed to response to two FOIA request that she had

submitted in May, 2005, seeking information about FS330054.  *See* Am. Compl. ¶¶ 1, 28-34.

**ARGUMENT**

**I.**

**CERTAIN OF PLAINTIFF'S DISCRIMINATION CLAIMS SHOULD
BE DISMISSED FOR FAILURE TO STATE COGNIZABLE
CLAIMS AND LACK OF SUBJECT MATTER JURISDICTION**

**A.    Standard of Review**

In resolving a Rule 12(b)(1) motion, the Court must accept all factual allegations in the

complaint as true, but should not draw inferences favorable to the party asserting jurisdiction, and

12

may consider materials beyond the pleadings to resolve the issue of jurisdiction. *See Maloney v. Cuomo*, 470 F. Supp. 2d 205, 210 (E.D.N.Y. 2007).

In resolving a Rule 12(b)(6) motion, a court accepts the factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 591-92 (2007). Although a complaint need not set forth detailed factual allegations, a plaintiff must provide the grounds of his entitlement to relief beyond mere "labels and conclusions"; "a formulaic recitation of the elements of a cause of action will not do." *See Bell Atlantic Corp. v. Twombly*, _ U.S. _, 127 S. Ct. 1955, 1964-65 (2007).

**B.      Plaintiff's State-Law Discrimination Claims Are Preempted by Title VII**

Plaintiff's claims of discrimination under the New York State Human Rights Law and the New York City Human Rights Law should be dismissed. *See* Am. Compl. ¶ 31. Title VII is "an exclusive, preemptive administrative and judicial scheme for the redress of federal employment discrimination." *Brown v. General Services Admin.*, 425 U.S. 820, 828-29 (1976); *see also Rivera v. Heyman*, 157 F.3d 101, 105 (2d Cir. 1998) (affirming dismissal of claims under New York Human Rights Law because the Rehabilitation Act, which provides identical procedures and relief as Title VII, was plaintiff's exclusive remedy); *Randall v. Potter*, 01 Civ. 2097 (THK), 2004 WL 439491, at *4 (S.D.N.Y. Mar. 9, 2004) (dismissing claims against federal agency under New York Human Rights Law as preempted by Title VII); *Marshall v. Nat'l Assoc. of Letter Carriers*, Nos. 00 Civ. 3167 (LTS), 01 Civ. 3086 (LTS), 2003 WL 223563, at *6 (S.D.N.Y. Feb. 3, 2003) (dismissing federal and state law statutory and common law claims as preempted by Title VII). Accordingly, plaintiff's state-law claims should be dismissed in their entirety as against all defendants.

**C.    Michael Chertoff, Secretary of DHS, Is the Only Proper Defendant under Title VII**

In addition to her claims against Michael Chertoff, in his official capacity as Secretary of

DHS,  plaintiff also appears to assert claims of discrimination against Troy, a current employee of

DHS, and Gantner, a former employee of DHS who is now deceased.  *See* Amend. Compl. at caption

and ¶¶ 10-11, 31.  However, under Title VII, the only proper defendant is "the head of the

department, agency, or unit."  42 U.S.C. § 2000e-16(c); *see also Drayton v. U.S. Dep't of Veterans

Affairs*, 654 F. Supp. 558, 562 (S.D.N.Y. 1987) (dismissing case against agency and low level

agency employees).  Accordingly, plaintiff's discrimination claims should be dismissed as against

DHS, Troy and Gantner.

**II.**

**THERE IS NO TRIABLE ISSUE OF FACT PRECLUDING SUMMARY
JUDGMENT ON PLAINTIFF'S TITLE VII CLAIMS AGAINST CHERTOFF**

**A.    Summary Judgment Standard**

If the movant demonstrates an absence of a genuine issue of material fact, the nonmovant

must "demonstrate more than some metaphysical doubt as to the material facts," and come forward

with "specific facts showing that there is a genuine issue for trial."  *Aslanidis v. United States Lines,

Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993).  If the nonmovant fails to do so, summary judgment is

appropriate.  *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir. 2004); *see* Fed. R. Civ. P.

56(c).  "In determining whether a genuine issue of material fact exists, a court must examine the

evidence in the light most favorable to, and draw all inferences in favor of, the non-movant."

*Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 253-54 (2d Cir. 2002) (citations omitted).

However, mere speculation, unsupported assertions, or conclusory allegations are insufficient to

defeat the motion.  *See Goenaga v. March of Dimes*, 51 F.3d 14, 18 (2d Cir. 1995).  The existence of

a mere scintilla of evidence in support of the nonmovant's position is also insufficient.  *Anderson v.*

14

*Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Rather, the adverse party "must come forward with evidence that would be sufficient to support a jury verdict in his favor."  *Id.; see also Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) ("mere incantation of intent or state of mind" insufficient).

**B.    Legal Framework for Plaintiff's Discrimination Claims under Title VII**

Title VII prohibits federal government agencies from discriminating on the basis of race, color, religion, sex, or national origin in making employment-related decisions.  *See* 42 U.S.C. § 2000e-16(a); *Simonton v. Runyon*, 232 F.3d 33, 35 (2d Cir. 2000).  Claims of disparate treatment under Title VII are assessed by way of the three-part burden-shifting analysis described in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Initially, the plaintiff has the burden of establishing a *prima facie* case of discrimination or retaliation.  To establish a *prima facie* case of discrimination under Title VII, plaintiff must make a showing that: 1) she is a member of a protected class; 2) she was qualified for the position at issue; 3) she suffered an adverse employment action; and 4) the circumstances of the adverse employment action give rise to an inference of discrimination.  *See Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004). Plaintiff must "proffer[ ] admissible evidence show[ing] circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive."  *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 38 (2d Cir. 1994).  Courts must "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture."  *Bickerstaff v. Vassar College*, 196 F.3d 435, 448 (2d Cir. 1999), *cert. denied*, 530 U.S. 1242 (2000).

If a plaintiff meets her burden of establishing a *prima facie* case of discrimination, a presumption of unlawful discrimination arises, and the burden shifts to the defendant, who must then offer a legitimate, nondiscriminatory reason for the adverse action.  *Reeves v. Sanderson Plumbing*

15

*Prods., Inc.*, 530 U.S. 133, 142 (2000); *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir.

2005). If the defendant is able to do so, the presumption of discrimination is erased, and the burden

shifts back to the plaintiff to show that the defendant's proffered reason is mere pretext, *and* the

defendant's true intent was discriminatory. *Reeves*, 530 U.S. at 143; *Woodman*, 411 F.3d at 76.

## C.    Regulatory Framework

Under Title VII, "a litigant *must* exhaust available administrative remedies in a timely

fashion" as a prerequisite to gaining access to the federal courts. *See Briones v. Runyon*, 101 F.3d

287, 289 (2d Cir. 1996) (emphasis added); *see also Brown*, 425 U.S. at 832. Under federal Equal

Employment Opportunity ("EEO") regulations, prior to filing a complaint, a federal employee must

attempt to resolve her claim informally by contacting an EEO counselor within forty-five (45) days

of the alleged discriminatory act or effective date of the alleged discriminatory personnel action. *See*

29 C.F.R. §1614.105(a)(1); *see also Briones*, 101 F.3d at 289-90. In *National Railroad Passenger*

*Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court unanimously held that "[a] discrete

retaliatory or discriminatory act 'occurred' on the day it 'happened,'" *id.* at 110, and identified

"termination, *failure to promote*, denial of transfer, or refusal to hire" as examples of conduct that

constituted a "discrete discriminatory act." *Id.* at 114 (emphasis added). The case law is clear that

the failure to contact an EEO counselor within the period prescribed by the regulations ordinarily

bars a civil action for discrimination. *Briones*, 101 F.3d at 289. If the matter cannot be resolved, the

employee must file a formal written administrative complaint with the agency within 15 days of

receipt of the EEO counselor's notice of final interview and right to file a formal complaint. *See* 29

C.F.R. § 1614.106(a) and (b).

Following the timely filing of an administrative complaint, "[t]he employee may then file a

civil action (i) *within 90 days of notice of a final agency decision on his or her EEO complaint*, or

16

(ii) after 180 days from the filing of the EEO complaint if the agency has not yet rendered a

decision." *Belgrave v. Pena*, 254 F.3d 384, 386 (2d Cir. 2001) (citing 42 U.S.C. § 2000e-16(c))

(emphasis added).  The employee may not file an action in federal court until the administrative EEO

process has been completed and fully exhausted.  *See* 29 C.F.R. § 1614.110.  Courts must strictly

adhere to such procedural requirements for gaining access to the federal courts; these timing

requirements "are not to be disregarded by courts out of a vague sympathy for particular litigants."

*Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152 (1994); *see also Irwin v. Dep't of*

*Veterans Affairs*, 498 U.S. 89, 94 (1990) (time limits should be strictly construed).

**D.    All Claims as to Which Plaintiff Has Failed to**
**Exhaust Her Administrative Remedies Should Be Dismissed**

**1.    Plaintiff Failed Timely to Seek EEO Counseling**
**in Connection with Her Failure-to-Promote Claims**

Plaintiff's discrimination claims concerning her non-selection for Vacancy Announcement

Nos. 330054, 101146, and 103847 are all time-barred.  It is undisputed that plaintiff first sought EEO

counseling on June 26, 2006, with respect to her failure-to-promote claims.  *See* Pl. Tr. at 208-09;

*see also* Pantoja Decl. Ex. 7 (Report of EEO Counseling) at US 6.[2]  That is more than nine months

after plaintiff's receipt of an e-mail providing notice, in the Summer of 2005, that selections had

already been and selectees notified in connection with FS330054, *see* Pl. Tr. at 94 ("I have no

information that selections were made besides an e-mail back and forth to the Vermont human

---

[2]  "[G]overnment agencies do not waive a defense of untimely exhaustion merely by
accepting and investigating a discrimination complaint."  *Belgrave*, 254 F.3d at 387 (internal
quotes and citation omitted); *see also Briones*, 101 F.3d at 291 (waiver found only where agency
failed to appeal express EEOC finding that administrative complaint was timely filed); *Bruce v.
United States Department of Justice*, 314 F.3d 71, 74 (2d Cir. 2002) (*per curiam*) (same).  In the
instant case, there was no finding by DHS that plaintiff had timely sought EEO counseling, and
there was no EEOC finding of timeliness from which to appeal.  Accordingly, Defendant did not
waive the untimeliness defense.

resources that said selections were made and selectees were notified.") and 102-04 (explaining that plaintiff received the referenced e-mail in Summer 2005); six months after the December, 2005, and January, 2006 notices of her non-selection for CIS-101146-NYC, *see* Pl. Tr. at 116-118; MacPherson Decl. ¶ 32 and Ex. Q; and five months after the January and February, 2006 notices advising plaintiff of her non-selection for CIS-103847-NYC, *see* Pl. Tr. at 146-47; MacPherson Decl. ¶ 37 and Ex. Y.

Moreover, plaintiff cannot assert that her deadline for contacting an EEO counselor should be equitably tolled to avoid dismissal of her Title VII claims. *See* Pl. Tr. at 223 (her 2005 EEO training discussed EEO counseling requirement). Equitable tolling is only appropriate in extraordinary circumstances, such as where plaintiff establishes that she was unaware of her rights and obligations as a result of "affirmative misconduct" by the defendant, that she received "inadequate notice" of the applicable deadline, or that a court led her to believe that she had done all that was required of her. *South v. Saab Cars USA, Inc.*, 28 F.3d 9, 11-12 (2d Cir. 1994).

Accordingly, plaintiff's claims of discrimination must be dismissed for failure to exhaust administrative remedies. *See Morgan*, 536 U.S. at 110; *Briones*, 101 F.3d at 289-90 (failure to exhaust in timely manner results in claim being time-barred).

### 2.    Plaintiff Failed Timely to Commence This Action

Assuming, *arguendo,* that plaintiff had timely sought EEO counseling with respect to her discrimination claims, those claims must still be dismissed because she thereafter failed to file an action in district court within 90 days of her receipt of the EEOC's June 19, 2007 decision denying her request for reconsideration of the denial of her EEOC appeal.

The EEOC's June 19, 2007 decision was mailed to plaintiff on that date and included a notice of her right to file a civil action "within ninety (90) calendar days." *See* Pantoja Decl. Ex. 11 at US 42 (Certificate of Mailing on June 19, 2007). Plaintiff admittedly received it by June 24, 2007. *See*

18

Pl. Tr. at 274 (acknowledging receipt on or about June 19, 2007), 275 (explaining receipt "was at least five days, within five days of June 19th"); Am. Compl.¶ 13 ("received a right to sue letter from the EEOC dated June 19, 2007, deemed to be served on June 24, 2007").  This Court may take judicial notice of the fact that June 24, 2007, was a Sunday, and that the United States Postal Service does not deliver mail on Sundays.[3]  Plaintiff thus must have received the June 19, 2007 decision prior to June 24, 2007.  Indeed, plaintiff was presumed to have received the June 19, 2007 decision three business days after it was sent, *i.e.*, on Friday, June 22, 2007, *see* Fed. R. Civ. P. 6(e); *Sherlock v. Montefiore Medical Center*, 84 F.3d 522, 525-26 (2d Cir. 1996) (party is presumed to have received EEOC notice three days from when it was sent and that notice was mailed on date shown on notice); *Nelson v. Ashcroft*, No 00 Civ. 9485 (AKH), 2003 WL 22004884, at *2 (S.D.N.Y. Aug. 22, 2003).

Plaintiff thus had 90 days from June 22, 2007, until September 20, 2007, a Thursday, to file an action in United States District Court.  42 U.S.C. § 2000e-16(c).  The current action was filed on Monday, September 24, 2007, and was therefore untimely.  *See Toolan v. Board of Ed.*, Nos. 02 Civ. 6989, 03 Civ. 576, 2003 WL 22015437, at *2 (S.D.N.Y. Aug. 25, 2003) ("To be timely, actions for violations of Title VII . . . must be filed within 90 days after receipt of a right to sue letter from the EEOC. . . . As the Second Circuit has held, 'in the absence of a recognized equitable consideration the court cannot extend the limitations period by even one day.'") (quoting *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984) (dismissing action filed 97 days after receipt)); *see, e.g., Cohen v. Federal Exp. Corp.*, — F. Supp. 2d — , Nos. 06 Civ. 482 , 07 Civ. 1288

---

[3]  *See, e.g., Major Oldsmobile, Inc. v. General Motors Corp.*, 93 Civ. 2189 (NRB), 1995 WL 326475, at *8 n.6 (S.D.N.Y. May 31, 1995) ("We take judicial notice that November 1 and 8, 1992 were Sundays."); *Blackburn v. Eli Lilly and Co.*, No. 99 Civ. 0722, 1999 WL 1125048, at *3 (N.D.N.Y. Dec. 1, 1999) (taking judicial notice that mail is not delivered on Sundays and that December 6, 1998, was a Sunday).

(RJH) (THK), 2008 WL 857432 (S.D.N.Y. Mar. 31, 2008) (dismissing ADEA suit filed four days late).

Moreover, plaintiff cannot assert that her timeline for filing this action should be equitably tolled to avoid dismissal of her Title VII claims. Plaintiff admittedly was aware of the filing deadline at the time she received the June 19, 2007 decision. *See* Pl. Tr. at 275 ("I understood it to be that I had 90 days from the time I received notice, 90 calendar days to days [sic] to file a civil action.").

**E.    Plaintiff Cannot Make Out a *Prima Facie* Case of Discrimination**

**1.    There Is No Inference of Discrimination**

Alternatively, defendant is entitled to summary judgment on plaintiff's discrimination claims because there are no circumstances giving rise to an inference of discrimination as required under the fourth prong of her *prima facie* case. Plaintiff must "proffer[ ] admissible evidence show[ing] circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive." *Chambers*, 43 F.3d at 38. Courts must "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." *Bickerstaff*, 196 F.3d at 448. Here, plaintiff cannot show that she was "'similarly situated in all material respects' to the individuals with whom she seeks to compare herself," *i.e.*, the selectees for the vacancies at issue. *See Graham v. Long Island R.R.*, 230 F.3d 34, 39-41 (2d Cir. 2000) (explaining that plaintiff must show that the other employees were similarly situated in all material respects). Unlike plaintiff, who was a grade 12 DAO with no significant prior supervisory experience when she applied to the vacancies at issue, *see* MacPherson Decl. ¶¶ 6, 38-40 and Ex. V; Pl. Tr. at 58, 71-75, *all* the selectees for FS330054, CIS-101146-NYC, and CIS-103847-NYC – Rosina, Tu, Toro, Faria, Williams, and Alman – had significant prior supervisory experience at the grade 13 level or higher, and often also had prior experience in the very programmatic area for which

they were selected.  Thus, they all were not similarly situated to plaintiff.  *See* MacPherson Decl. ¶¶

20-40.  In addition, all of the selectees, unlike plaintiff, had received recommendations.  *Id.*

Tu and Rosina, who were in grade 13 and 14 positions at the time of their applications and

had already been grade 13 SDAOs for numerous years, had met their time-in-grade requirements for

both grade 12 and grade 13 positions and were considered and selected for FS330054 for grade 14

SDAO positions.  *See* MacPherson Decl. ¶ 21 and Ex. C at US 1250, Ex. E at 1276-77, 1283-85, and

Ex. F at US 1242-45.

Faria was selected off a non-traditional certificate of eligibles as a grade 13 DAO because she

had already been a grade 13 SDAO for at least a year, a Temporary SDAO for four months, and an

Acting Supervisory Asylum Officer, all prior to applying to CIS-101146-NYC.  *See* MacPherson

Decl. ¶ 30 and Ex. L, Ex. M at US 317-18, and Ex. N at 135-136.  That Faria was not similarly

situated to plaintiff is made even more clear by the fact that Faria was on a wholly different type of

certificate of eligibles.  *See* MacPherson Decl. ¶ 31 and Ex. O.  In addition, Faria was  recommended

for the position of SDAO in the Refugee and Parole Unit based on her prior experience with that

Unit.  *See* MacPherson Decl. ¶ 29 and Exs. L, M, and N.  Similarly, Toro, Willams, and Alman were

not similarly situated to plaintiff because they too had significant prior grade 13 supervisory

experience in the very SDAO position for which they were selected.  *See* MacPherson Decl. ¶¶ 27-

28, 32-33, 35-36, and Exs. I,  J, R, T, W, and X.

As the relative qualifications of the candidates goes to the heart of plaintiff's non-selection

claims, plaintiff cannot show that she was "similarly situated in all material respects" to the

selectees.  *Graham*, 230 F.3d at 39.  Plaintiff also admits that she is not aware of any misconduct on

the part of MacPherson in connection with her handling of the vacancies at issue.  *See* Pl. Tr. at 249-

51.  Nor is plaintiff aware of Gantner, MacPherson, or anyone involved in the selection process for

the subject vacancies ever having engaged in conduct that was insensitive to anyone's race or national origin.  *See* Pl. Tr. at 251-62.  Because this record does not permit an inference of unlawful discrimination as required to make out a *prima facie* case of discrimination, Defendant is entitled to summary judgment on the discrimination claim as a matter of law.

**F.    Defendant Has Proffered Legitimate, Nondiscriminatory**
**and Non-retaliatory Reasons for His Actions**
Even assuming plaintiff were able to make out a *prima facie* case of discrimination,

Defendant met his burden of production in coming forward with legitimate, nondiscriminatory reasons for his actions.  The selecting official explained that, unlike plaintiff, all of the selectees had significant, relevant supervisory experience prior to applying for the subject vacancies, had previously worked in the sections in which the vacancies existed, and generally received recommendations from the pertinent Section Chiefs.  *See* MacPherson Decl. ¶¶ 20-40.  Defendant having met his burden of articulation in establishing a lawful motive for the allegedly adverse actions, it became plaintiff's ultimate burden to present sufficient evidence for a reasonable factfinder to conclude that the proffered legitimate, non-discriminatory reasons were a pretext for unlawful discrimination or retaliation.  *See St. Mary's Honor Ctr.*, 509 U.S. at 515.  Consistent with the record, plaintiff could not point to a single race- or national-origin-based comment by anyone in management.  *See* Pl. Tr. at 251-62.  Because the record is devoid of any evidence that Defendant's proffered reasons were a pretext for unlawful discrimination, Defendant is entitled to summary judgment.

### III.

### THIS COURT LACKS SUBJECT MATTER
### JURISDICTION OVER PLAINTIFF'S FOIA CLAIM

Plaintiff's FOIA requests relating to FS330054 are defective because, misaddressed as they were to OPM, they were never received by CIS.  *See* Eggleston Decl. ¶ 5.  The requests do not even

ask for documents.[4]  *See* Pantoja Decl. Ex. 1.  The Supreme Court has held that federal jurisdiction

over a FOIA claim requires a claimant to demonstrate that an agency has "(1) 'improperly' (2)

'withheld' (3) 'agency records.'"  *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142

(1989) (internal marks omitted).  "Unless each of these criteria is met, a district court lacks

jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure

requirements."  *Id.*  FOIA requires agencies to process only requests for records that "reasonably

describe" the records sought and are "made in accordance with published rules . . . ."  5 U.S.C.

§ 552(a)(3)(A).  Similarly, DHS's FOIA regulation requires that the requestor "describe the records

that [she] seek[s] in enough detail to enable Department personnel to locate them with a reasonable

amount of effort," and that, "whenever possible, [the] request should include specific information

about each record sought, such as the date, title or name, author, recipient, and subject matter of the

record."  6 C.F.R. § 5.3(b).  In addition, DHS's FOIA regulation requires that requests be made "by

writing directly to the Department component that maintains those records."  6 C.F.R. § 5.3(a).

Plaintiff's failure to present a request that comported with FOIA and the applicable FOIA

regulations constitutes a failure to exhaust administrative remedies because, as a technical matter,

CIS never received, much less denied, a properly framed request for access to records.  *See, e.g.*,

*Kessler v. United States*, 899 F. Supp. 644, 645 (D.D.C. 1995) (dismissing FOIA claim for failure to

exhaust administrative remedies on ground that misaddressed FOIA request failed to meet regulatory

requirements).  As here, the Internal Revenue Service ("IRS") FOIA regulations at issue in *Kessler*

did not provide for the forwarding of misdirected FOIA requests to the proper office within the IRS.

---

[4]  Plaintiff's FOIA claim is limited to her alleged requests concerning FS330054.  *See*
Am. Compl. ¶¶ 18-20.  Plaintiff received documents in response to requests pertaining to CIS-
101146-NYC, *see* Pl. Tr. at 122, 156-159, 282-84; Pantoja Decl. Exs. 4-6, and she did not make
a FOIA request specific to CIS-103847-NYC, *see* Pl. Tr. at 284.  Plaintiff did not appeal CIS's
response to the requests relating to CIS-101146-NYC.  *See* 6 C.F.R. § 5.9.

23

899 F. Supp. at 645.  DHS regulations require a FOIA requester to direct a FOIA request to the

appropriate office within DHS, without exception – if a FOIA requester mistakenly addresses his

request in violation of the DHS regulations, that mistake is not cured under the applicable

regulations, and the requester has failed to exhaust his administrative remedies.  *See, e.g., Graphics

of Key West, Inc. v. United States*, No. CV-N-93-718-ECR, 1996 WL 167861, at *7 (D. Nev. Feb. 5,

1996) (dismissing FOIA claim for failure to exhaust administrative remedies on basis that FOIA

requests failed to meet regulatory requirements); *Kessler*, 899 F. Supp. at 645 (same); *Reith v.

Internal Revenue Service*, Civ. No. F 80-87, 1980 WL 1659, at *5 (N.D. Ind. Sept. 10, 1980)

(dismissing FOIA claim on ground that failure to make proper FOIA request constituted failure to

exhaust administrative remedies); *White v. Loury*, Civ. No. C78-144, 1978 WL 4499, at *3 (N.D.

Ohio May 30, 1978) (same); *cf. American Fed'n of Gov't Employees v. U.S. Dep't of Commerce*, 907

F.2d 203, 209 (D.C. Cir.1990) (plaintiff failed to exhaust FOIA's administrative remedies by

requesting waiver of search fees).

  Even assuming that plaintiff had actually exhausted her administrative remedies with respect

to the FOIA request pertaining to FS330054, which she did not, the FOIA claim is moot because

defendant has produced documents relating to FS330054 in discovery in this matter.  Plaintiff did not

move to compel responses to her discovery requests in general, or to any request in particular.  *See

Dawson v. Drug Enforcement Administration New York Field Division*, No. 00 Civ. 5887

(JSR)(REL), 2002 WL 418022, at *3 (S.D.N.Y. Mar. 14, 2002) ("By producing the requested

documents, this case is rendered moot and should be dismissed for lack of subject matter

jurisdiction."); *Mitchell v. Kemp*, No. 91 Civ. 2983 (RWS), 1992 WL 188355, at *3 (S.D.N.Y. July

27, 1992) (dismissing FOIA action for lack of subject matter jurisdiction where agency either

produced requested documents or demonstrated their unavailability), *aff'd*, 999 F.2d 536 (2d Cir.

24

1993) (Table); *see also Haji v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, No. 03 Civ.

8479 (DC), 2004 WL 178625, at *2 (S.D.N.Y. Aug. 10, 2004) (dismissing action as moot where

documents were destroyed). "[I]t is inconsequential that the documents were received as part of a

discovery production, as opposed to a document labeled the response to their FOIA request."

*Anderson v. Leavitt*, No. 03-6115 (DRH), 2007 WL 2874838, at *16 (E.D.N.Y. Sept. 27, 2007).

## CONCLUSION

For the reasons set forth above, the Amended Complaint should be dismissed in its entirety

against all defendants pursuant to Rules 12(b)(1), 12(b)(6), and 56 of the Federal Rules of Civil

Procedure.

Dated: New York, New York
      June 4, 2008

                                  Respectfully submitted,

                                  MICHAEL J. GARCIA
                                  United States Attorney for the
                                  Southern District of New York
                                  Attorney for Defendants

                                    /s/ Joseph A. Pantoja
               By:   JOSEPH A. PANTOJA
                                  Assistant United States Attorney
                                  86 Chambers Street, 3rd Floor
                                  New York, New York 10007
                                  Tel.: (212) 637-2785
                                  Fax:  (212) 637-2750