UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
WINNIFRIED NOEL CHARLES,                    :

                    Plaintiff,                          :

                                                 :

               -against-                                :

MICHAEL CHERTOFF, Secretary of the
Department of Homeland Security, in his official    :
capacity, ENRICA TROY, MARY ANN
GANTNER, and the DEPARTMENT OF                      :
HOMELAND SECURITY,

                                                 :

                    Defendants.
------------------------------------------------------------ x

ECF CASE

No. 07 Civ. 8324 (JSR) (THK)

## DECLARATION OF GWYNNE MACPHERSON

GWYNNE MACPHERSON, pursuant to 28 U.S.C. § 1746, declares the following under penalty of perjury:

1. I am employed by the United States Department of Homeland Security ("DHS") as Field Office Director ("FOD") at the New York District Office of United States Citizenship and Immigration Services ("CIS"). At all times relevant to matters discussed in this declaration, my office was located in Manhattan, New York. I have been FOD since June 25, 2007. From September, 2002, to March, 2003, I was the Assistant District Director for Adjudications at the New York District Office. From March, 2003, until approximately June 25, 2007, I was the Deputy District Director at the New York District Office. This declaration is based on my personal knowledge and my review of information, including documents, available to me during the normal course of my duties.

2. As Deputy District Director, I had oversight over all CIS employees at the New York office from 2002 through 2006.

3. In October, 1998, plaintiff Winnifried Charles was hired as a District Adjudication Officer ("DAO"), grade 5, at the Garden City, New York, office of the former Immigration and Naturalization Service, which was part of the Department of Justice at the time. That position had a promotion potential of grade 12.

4. Ms. Charles worked as a DAO in the New York office of CIS until September 7, 2006, when she voluntarily resigned as a grade 12 DAO to participate in an internship with the New York State Unified Court System.

5. From late 2003 until Ms. Charles resigned in 2006, plaintiff generally was assigned to the Naturalization Section.

6. The highest grade and step attained by Ms. Charles prior to her resignation was grade 12, step 4.

7. My understanding is that Ms. Charles attended law school at night for a few years and eventually obtained her law degree.

8. The hierarchy of non-district level positions in the New York District Office ranges from DAO to various levels of Supervisory District Adjudications Officer, now known as Supervisory Adjudications Officer (both hereinafter referred to as "SDAO") as follows: DAO, the grades for which ranged from 5 to 12; SDAO, a grade 13 first-level supervisory position; Site Manager, which is technically a grade 14 SDAO position; and Section Chief, a grade 14 SDAO position, followed by district-level management positions. A true and correct copy of the

position description for the SDAO position is annexed to this declaration as Exhibit A, bates-stamped US 356-62.

9.   The Tri-Bureau Merit Promotion Plan ("Merit Plan") effective March 7, 2005, sets forth the policy for implementing competitive merit selection procedures within ICE, United States Customs and Border Protection, and United States Immigration and Customs Enforcement. A true and correct copy of the Merit Plan is annexed to this declaration as Exhibit B, bates-stamped US 2650-2665. Under the Merit Plan, vacancy announcements may be issued to establish a pool of applicants, and certificates identifying eligible candidates may be issued up to one year after the closing date of the announcement. *See* Merit Plan at US 2653. Vacancy announcements must be publicized on the Office of Personnel Management's ("OPM's") USAJOBS web site. *Id.*

10.   The application process is largely automated and conducted on-line through CareerFinder in accordance with the procedures set forth in the vacancy announcement. *See* Merit Plan at US 2653. Based on an evaluation, each applicant receives a rating based on a total possible score of 100 points, and the minimum qualifying score is 70 points. *See* Merit Plan at US 2655. The rating and ranking of applicants is a computer-generated process based on the answers given to the job-specific questionnaires and other information forming part of the application. The candidates determined to be best qualified, including alternate staffing sources such as lateral transfers, are referred to the selecting official.

11.   Selecting officials may choose any applicant referred on the best-qualified list, regardless of how far up or down the list the applicant's name appears.

12. Certificates listing eligible candidates may be used within 120 days of their issuance and with multiple vacancy announcements, so long as the additional vacancies are for a position with the same job description, organization, and location, which eliminates the need to issue new vacancy announcements every time a vacancy arises soon after a list of eligible applicants has been created in connection with a recent vacancy announcement.

13. During 2005 and early 2006, then District Director Mary Ann Gantner did not require any interviews, and the use of interviews in connection with the filling of vacancies was entirely optional, at the discretion of the selecting officials or their designees. Generally, during 2005 and early 2006, interviews were not conducted in connection with vacancy announcements pertaining to the New York office.

14. During 2005 and 2006 and as directed by then District Director Mary Ann Gantner, I was generally the selecting official for vacancies, including SDAO vacancies, at the New York office.

15. After Human Resources in Vermont prepared the certificate of eligibles, the certificate would be circulated for vetting and recommendations among the Section Chiefs for the sections in which the vacancies existed.

16. After that process was completed, I would typically receive a certificate of eligibility and recommendations, and I would generally concur with reasonable recommendations for selections unless I had a specific reason not to do so.

17. In May, 2005, as a grade 12 DAO in the New York office, Ms. Charles applied to Vacancy Announcement No. FS330054 ("FS330054"), which advertised a "few" SDAO, GS-1801-13/14, vacancies in CIS's New York office, among other offices. A true and correct copy

4

of that vacancy announcement is annexed hereto as Exhibit C, bates-stamped US 1249-72. A true and correct copy of the Optional Form 612 submitted by Mr. Charles for FS330054 is annexed to this declaration as Exhibit D, bates-stamped US 1247-48.

18.     The SDAO position advertised in FS330054 was a grade 13/14 with a promotion potential of grade 14, and candidates, depending on their work experience, could qualify at the grade 13 or 14 level. *See* Ex. C at US 1249-51.

19.     There were no interviews conducted in connection with FS330054, and there was no specialized education requirement. *See* Ex. C at US 1249-51.

20.     Ms. Charles was qualified at the grade 13 level for FS330054 by virtue of having satisfied the time-in-grade requirement, *i.e.*, having spent at least one year doing work at the grade 12 level.

21.     I selected James Tu ("Tu") and Stephen Rosina ("Rosina") for FS330054 because of their extensive prior supervisory experience. A true and correct copy of Tu's application materials for FS330054 are attached to this declaration as Exhibit E, bates-stamped US 1273-1303. A true and correct copy of Rosina's application materials for FS330054 are annexed to this declaration as Exhibit F, bates-stamped US 1240-46. Tu, who was recommended for the position, had been working as an Acting Section Chief, grade 13, continuously since January, 2005. *See* Ex. E at US 1276, 1284. From October 3, 2004, to January, 2005, Tu also worked as a Temporary Section Chief, a grade 14 position, and prior to that he had been a grade 13 SDAO since 1999. *See id.* at US 1275-1277. Rosina, who was also recommended for the position, had been working continuously as a Temporary Section Chief, a grade 14 position, since April 2005, prior to which he had been a grade 13 SDAO since 1995. *See* Ex. F at US 1242. Indeed, Tu and

Rosina were both qualified for FS330054 at the grade 14 level. *See* Ex. C at 1249-51. Tu and Rosina are currently Section Chiefs in the New York District Office.

22. Ms. Charles and all other non-selectees should have received a notice during the summer of 2005 advising them of their non-selection.

23. In November, 2005, Ms. Charles applied to Vacancy Announcement No. CIS-101146-NYC ("CIS-101146-NYC"), which purported to advertise three SDAO GS-1801-13 vacancies in CIS's New York office. A true and correct copy of that announcement is annexed to this declaration as Exhibit G, bates-stamped US 298-304. A true and correct copy of Ms. Charles's Optional Form 612 and the narrative report of her responses to the job-specific questionnaire for CIS-101146-NYC is annexed hereto as Exhibit H, bates-stamped US 165-71. Ms. Charles was qualified for CIS-101146-NYC.

24. The SDAO position advertised in CIS-101146-NYC was a grade 13 position with no promotion potential beyond that grade. *See* Ex. G at US 298.

25. There were no interviews conducted in connection with CIS-101146-NYC, and there was no specialized education requirement in the announcement. *See id.* at US 299.

26. The three vacancies that were filled through CIS-101146-NYC were in sections headed by Stephen Rosina ("Rosina"), Section Chief, Adjustment of Status, and John Ryan ("Ryan"), Section Chief, Adjudications 2. Initially, only two selections were made as the third vacancy was not yet ready to be filled. I initially selected Monica Toro ("Toro") and Nancy Faria ("Faria") for CIS-101146-NYC, followed by Terri Williams shortly thereafter.

27. On December 22, 2005, Rosina recommended Toro for one of the permanent SDAO vacancies under CIS-101146-NYC based on the quality of Toro's work as a Temporary

6

SDAO since September, 2005, including the influence she has had on trainees under her charge. A true and correct copy of Rosina's recommendation is annexed to this declaration as Exhibit I, bates-stamped US 150. A true and correct copy of Toro's resume and narrative report of her responses to the job-specific questionnaire are annexed to this declaration as Exhibit J, bates-stamped US 176-82.

28. Based on Toro's supervisory experience in the section in which the vacancy was located, I concurred with Rosina's recommendation. On December 27, 2005, I selected Toro for CIS-101146-NYC from Merit Promotion Certificate of Eligibles No. MB-06-REP-01176S0, which had issued on December 6, 2005. A true and correct copy of the certificate reflecting Toro's selection is annexed to this declaration as Exhibit K, bates-stamped US 151-53.

29. On December 22, 2005, Ryan recommended that Faria be selected for the position of SDAO in the Refugee and Parole Unit based on her "extensive knowledge of the work and personnel" in that Unit, which was the result of her having spent a few years in that Unit as a DAO as well as serving as Temporary SDAO there since July 2005. A true and correct copy of Ryan's recommendation is annexed to this declaration as Exhibit L, bates-stamped US 129. A true and correct copy of Faria's resume and narrative report of her responses to the job-specific questionnaire are annexed to this declaration, respectively, as Exhibit M, bates-stamped US 317-19, and Exhibit N, bate-stamped US 135-37.

30. Faria was a grade 13 DAO with 18 years of experience with the agency and had served as SDAO from February 25, 2000, through February 27, 2001; a Temporary SDAO from July 10, 2005, through November 10, 2005; as well as an Acting Supervisory Asylum Officer, prior to applying to CIS-101146-NYC. *See* Ex. L, Ex. M at US 317-18, and Ex. N at 135-136.

7

31. Based on Faria's extensive supervisory experience and prior experience in the section in which the vacancy existed, I concurred with Ryan's recommendation. On December 27, 2005, I selected Faria from the Non-Traditional Certificate of Eligible No. MB-06-REP-01177S0, which had issued on December 6, 2005, because she had previously held a permanent position at the grade 13. A true and correct copy of the certificate reflecting Faria's selection is annexed to this declaration as Exhibit O, bates-stamped US 130-31.

32. Initially, Williams, like plaintiff, was not selected for CIS-101146-NYC. True and correct copies of the non-selection notices issued to Williams and Ms. Charles, which are usually preceded by e-mails advising of the non-selection, are annexed to this declaration as Exhibit P, bates-stamped US 344, and Exhibit Q, bates-stamped US 336, respectively. A true and correct copy of Williams' resume and responses to the job-specific questionnaire are annexed to this declaration as Exhibit R, bates-stamped US 227-232. A true and correct copy of the certificate of eligibles reflecting the non-selections of Ms. Charles and Williams is annexed to this declaration as Exhibit S, bates-stamped US 89-90.

33. Shortly after Toro and Faria had been selected, Rosina had an additional vacancy in his section that was ready to be filled, and he was asked for another recommendation. On January 9, 2006, he recommended that Williams be selected from the existing applicant pool for CIS-101146-NYC. A true and correct copy of his e-mail recommending Williams is annexed to this declaration as Exhibit T, bates-stamped US 124-26. I agreed with his recommendation, and I knew that Williams had been working in Rosina's section as a grade 13 Temporary SDAO since September, 2005, and already had supervisory experience in the very position to which she was

selected, and consequently I had no reason to disturb Rosina's determination of who would be best suited to join his section as SDAO. *See* Ex. R at US 228, 231-32.

34.     In January, 2006, Ms. Charles applied to Vacancy Announcement No. CIS-103847-NYC ("103847"), which advertised one temporary SDAO GS-1801-13 vacancy in CIS's New York office. A true and correct copy of the announcement is annexed to this declaration as Exhibit U, bates-stamped US 81-87. A true and correct copy of Ms. Charles's application materials are annexed to this declaration as Exhibit V, bates-stamped US 569-576.

35.     The SDAO position advertised in CIS-103847-NYC was a temporary grade 13 assignment not to exceed one year that could have been extended for one additional year, and it was located in the Non-Immigration Unit of the Adjudications 2 section, which was headed by Ryan. *See* Ex. U at US 81. There were no interviews conducted in connection with CIS-103847-NYC, and there was no specialized education requirement. *See* Ex. U at US 81-87.

36.     On February 6, 2006, Ryan recommended Colvin Alman ("Alman") for Temporary SDAO in the Non-Immigration Unit. A true and correct copy of Ryan's recommendation is annexed to this declaration as Exhibit W, bates-stamped US 88. A true and correct copy of Alman's resume is annexed to this declaration as Exhibit X, bates-stamped US 115-18. Based mostly on Alman's experience in the Unit as a DAO, from 1998 to 2005, and a grade 13 Temporary SDAO since November, 2005, I concurred with Ryan's recommendation. On February 8, 2006, I selected Alman for CIS-103847-NYC off of Merit Promotion Certificate of Eligibles MB-06-REP-01513S0, which had issued on February 2, 2006. A true and correct copy of the certificate reflecting Alman's selection is annexed to this declaration as Exhibit Y, bates-stamped US 89-90.

37. Ms. Charles was issued a letter dated February 21, 2006, which is typically preceded by an e-mail, notifying her of her non-selection for CIS-103847-NYC. A true and correct copy of that letter is annexed to this declaration as Exhibit Z, bates-stamped US 43.

38. Many of the applicants for the referenced vacancies had worked for CIS or its predecessor for many years and had varying levels of education, but the most important factor for the recommending officials and me as the selecting official was the selectees' extensive prior experience, including supervisory experience at the SDAO level and higher, in the very sections in which the vacancies existed.

39. Although Ms. Charles was qualified for FS330054, CIS-101146-NYC, and CIS-103847-NYC at the grade 13 level, she had not identified any prior significant supervisory experience in her application materials, nor any prior experience in the sections in which the vacancies existed, and I was not otherwise made aware of any such experience.

40. I do not personally know each of the employees who report directly or indirectly to me in my chain of command. In connection with a merit promotion announcement, I rely primarily on the recommendations of the Section Chiefs in whose sections the vacancies exist.

41. The United States Office of Personnel Management is not part of DHS.

Dated: June 4, 2008
New York, NY

_____
GWYNNE MACPHERSON