MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By: JOSEPH A. PANTOJA
86 Chambers Street – 3rd Floor
New York, New York  10007
Tel.: (212) 637-2785
Fax: (212) 637-2750
E-mail: joseph.pantoja@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WINNIFRIED NOEL CHARLES,                          :

                          Plaintiff,              :            ECF CASE

                                                  :            No. 07 Civ. 8324 (JSR) (THK)

         -against-                                :

                                                  :

MICHAEL CHERTOFF, Secretary of the
Department of Homeland Security, in his official  :
capacity, ENRICA TROY, MARY ANN
GANTNER, and the DEPARTMENT OF                     :
HOMELAND SECURITY,

                                                  :

                          Defendants.             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' LOCAL RULE 56.1 STATEMENT

Pursuant to Civil Rule 56.1 of the Local Rules of the United States District Court for the

Southern District of New York, defendants state that there is no genuine issue to be tried with

respect to the following material facts:[1]

---

[1] References to "MacPherson Decl." and "Pantoja Decl." are to the declarations of Gwynne MacPherson, dated June 3, 2008, and Joseph A. Pantoja, dated June 4, 2008. References to "Pl. Tr." and "Troy Tr." are to the depositions of the plaintiff and Enrica Troy in this matter, selected pages of which are attached to the Pantoja Declaration as Exhibits 12 and 13, respectively.

1.      Plaintiff is a "Trinidadian American and an African American."  Am. Compl. ¶ 29.

2.      In October, 1998, plaintiff was hired as a District Adjudication Officer ("DAO"), grade 5, at the Garden City, New York, office of the former Immigration and Naturalization Service, which was part of the Department of Justice at the time.  Pl. Tr. at 14, 76-77; MacPherson Decl. ¶ 3.

3.      That position had a promotion potential of grade 12.  *Id.* at 14-15; MacPherson Decl. ¶ 3.

4.      In 2000, plaintiff requested and received a transfer to the New York District Office located at 26 Federal Plaza, New York, so that she could be closer to home.  Pl. Tr. at 23.

5.      In 2003, plaintiff was part of a mass transfer of DAOs to the newly created DHS. Pl. Tr. at 76-78.

6.      Plaintiff worked as a DAO in the New York office of DHS, Citizenship and Immigration Services ("CIS"), until September 7, 2006, when she voluntarily resigned to participate in an internship with the New York State Unified Court System.  Pl. Tr. at 91-92; MacPherson Decl. ¶ 4.

7.      From late 2003 until plaintiff resigned in 2006, Enrica Troy ("Troy"), who was an Supervisory District Adjudication Officer at the time, was plaintiff's immediate supervisor in the Naturalization Section.  Pl. Tr. at 36-39, 57-58; Troy Tr. at 6-9; MacPherson Decl. ¶ 5.

8.      During her employment as DAO, plaintiff received promotions and within-grade step increases, and the highest grade and step she attained prior to her resignation was grade 12, step 4.  Pl. Tr. at 58, 71-75; MacPherson Decl. ¶ 6.

9.      Plaintiff attended law school at night from 2001 to 2006, obtained her law degree, and passed the New York State bar in 2006.  Am. Compl. ¶ 17; MacPherson Decl. ¶ 7.

10.     The hierarchy of non-district level positions in the New York District Office range from DAO to various levels of Supervisory District Adjudications Officer, also known as Supervisory Adjudications Officer (both hereinafter referred to as "SDAO") as follows:  DAO, the grades for which ranged from 5 to 12; SDAO, a grade 13 first-level supervisory position; Site Manager, which is technically a grade 14 SDAO position; and Section Chief, a grade 14 SDAO position, followed by district-level management positions.  Pl. Tr. at 29-30, 200-01; MacPherson Decl. ¶ 8 and Ex. A (position description for SDAO).

11.     The Tri-Bureau Merit Promotion Plan ("Merit Plan") effective March 7, 2005, sets forth the policy for implementing competitive merit selection procedures within ICE, United States Customs and Border Protection, and United States Immigration and Customs Enforcement.  *See* MacPherson Decl. ¶ 9 and Ex. B (Merit Plan).

12.     Under the Merit Plan, vacancy announcements may be issued to establish a pool of applicants, and certificates identifying eligible candidates may be issued up to one year after the closing date of the announcement.  *See* MacPherson Decl. ¶ 9 and Merit Plan at US 2653.

13.     Vacancy announcements must be publicized on the Office of Personnel Management's ("OPM's") USAJOBS web site.  *See* MacPherson Decl. ¶ 9 and Merit Plan at US 2653.

14.     The application process is largely automated and conducted on-line through CareerFinder in accordance with the procedures set forth in the vacancy announcement.  *See* MacPherson Decl. ¶ 10 and Merit Plan at US 2653.

3

15.     The Merit Plan requires that candidates "be evaluated for positions and receive a rating based on their job-related knowledge, skills, and abilities," which evaluation may be based on "one or more" specified evaluation methods, including:  (1) answer to job-related questions; (2) job-related/occupational tests; (3) narrative responses to job knowledge, skill, ability or competency; (4) structured interviews; and (5) other approved assessment instruments meeting certain conditions relevance and fairness.  *See* Merit Plan at US 2655.  Based on the evaluation, each applicant receives a rating based on a total possible score of 100 points, and the minimum qualifying score is 70 points.  *See* Merit Plan at US 2655.

16.     The rating and ranking of applicants is a computer-generated process based on the answers given to the job-specific questionnaires and other information forming part of the application.  *See* MacPherson Decl. ¶ 10.

17.     The candidates determined to be best qualified are referred to the selecting official.  *See* Merit Plan at US 2655.

18.     Selecting officials may choose any applicant referred on the best-qualified list, and may select from those referred as best qualified and/or alternate staffing.  Merit Plan at US 2656.

19.     Applicants for whom competitive procedures do not apply, such as alternate staffing candidates, including lateral transfers, may be considered and referred, in a separate category, for selection consideration in alphabetical order, provided they meet the basic qualification and eligibility requirements, along with those referred as best qualified, *see* Merit Plan at US 2655; and alternate staffing candidates, or candidates from any other appropriate source, may be selected at any time in the process of filling a position, *id.* at US 2656.

4

20.     If, within 120 days of the issuance of the initial selection list, additional vacancies covered by the same official position description, location, and organization occur, applications from the previous announcement may be used for certification for these positions.  *Id.* at US 2657.

21.     The use of interviews in connection with the filling of vacancies is entirely optional, at the discretion of the selecting officials or their designees.  *See* Merit Plan at US 2655-56.

22.     During 2005 and early 2006, then District Director Mary Ann Gantner did not require any interviews, and the use of interviews in connection with the filling of vacancies was entirely optional, at the discretion of the selecting officials or their designees.  Generally, during 2005 and early 2006, interviews were not conducted in connection with vacancy announcements pertaining to the New York office.  *See* MacPherson Decl. ¶ 13.

23.     Gantner did not require any interviews, and generally interviews were not conducted in connection with vacancy announcements issued during 2005 and early 2006.  *Id.*

24.     During 2005 and 2006 and as directed by then District Director Mary Ann Gantner, MacPherson was generally the selecting official for vacancies, including SDAO vacancies, at the New York office  *See* MacPherson Decl. ¶ 14.

25.     After Human Resources in Vermont prepared the certificate of eligibles, the certificate would have been circulated for vetting and recommendations among the Section Chiefs for the sections in which the vacancies existed.  *Id.* ¶ 15.

5

26.     After that process, MacPherson would receive a certificate of eligibility and recommendations, and she would generally concur with reasonable recommendations for selections unless she had a specific reason not to do so.  *Id.* ¶ 16.

27.     Troy, who was not even aware that plaintiff had applied for promotions during 2005 and 2006, had no involvement in any of the vacancies to which plaintiff applied prior to her resignation.  *See* Troy Tr. at 91-93.

28.     In May, 2005, plaintiff, as a grade 12 DAO in the New York office, applied to Vacancy Announcement No. FS330054 ("FS330054"), which advertised a "few" SDAO, GS-1801-13/14, vacancies in CIS's New York office, among other offices.  *See* Am. Compl. ¶ 18; MacPherson Decl. ¶ 17 and Ex. C (announcement) and Ex. D (plaintiff's Optional Form 612).

29.     The SDAO position advertised in FS330054 was a grade 13/14 with a promotion potential of grade 14, and candidates, depending on their work experience, could qualify at the grade 13 or 14 level.  *See* MacPherson Decl. ¶ 18 and Ex. C at US 1249-51.

30.     There were no interviews conducted in connection with FS330054, and there was no specialized education requirement associated with that announcement.  *See* MacPherson Decl. ¶ 19 and Ex. C at US 1249-51.

31.     Plaintiff was qualified at the grade 13 level for FS330054 by virtue of having satisfied the time-in-grade requirement, *i.e.*, having spent at one year doing work at the grade 12 level.  *See* MacPherson Decl. ¶ 20.

32.     The selectees for FS330054 were James Tu ("Tu") and Stephen Rosina ("Rosina").  *See* MacPherson Decl. ¶ 21 and Ex. E (Tu's application), Ex. F (Rosina's application).

6

33.    Tu and Rosina were recommended for selection for FS330054.  *See* MacPherson Decl. ¶ 21.

34.    MacPherson selected Tu and Rosina for FS330054 because of their extensive prior supervisory experience.  *See* MacPherson Decl. ¶ 21, Exs. E and F.

35.    Tu had been working as an Acting Section Chief, grade 13, continuously since January, 2005.  *See* MacPherson Decl. ¶ 21 and Ex. E at US 1276, 1284.

36.    From October 3, 2004, to January, 2005, Tu also worked as a Temporary Section Chief, a grade 14 position, and prior to that he had been a grade 13 SDAO since 1999.  *See id.* ¶ 21 and Ex. E at US 1275-1277.

37.    Rosina had been continuously working as a Temporary Section Chief, a grade 14 position, since April 2005, prior to which he had been a grade 13 SDAO since 1995.  *See* MacPherson Decl. ¶ 21 and Ex. F at US 1242.

38.    Tu and Rosina were both qualified for FS330054 at the grade 14 level.  *See* MacPherson Decl. ¶ 21 and Ex. C at 1249-51.

39.    Tu and Rosina are currently Section Chiefs in the New York District Office.  *See* MacPherson Decl. ¶ 21.

40.    During the summer of 2005, plaintiff received an e-mail advising that selections had been made for FS330054 and that the selectees had already been notified.  *See* MacPherson Decl. ¶ 22; Pl. Tr. at 94 ("I have no information that selections were made besides an e-mail back and forth to the Vermont human resources that said selections were made and selectees were notified.") and 102-04 (explaining that plaintiff received the referenced e-mail in Summer 2005).

7

41. The United States Office of Personnel Management is not part of the Department of Homeland Security. *See* MacPherson Decl. ¶ 41.

42. CIS has no record of having received a FOIA request from plaintiff dated 2005 and concerning FS330054. *See* Declaration of Jill A. Eggleston ("Eggleston Decl.") ¶ 5.

43. FOIA and Privacy Act requests for human resources information involving CIS should be sent to Customs and Border Protection, Burlington Human Resources Office, 70 Kimball Avenue, South Burlington, Vermont 05403-6813, which was also the address for such requests during 2005. *See* Eggleston Decl. ¶ 4.

44. In November, 2005, plaintiff applied to Vacancy Announcement No. CIS-101146-NYC ("CIS-101146-NYC"), which advertised three SDAO GS-1801-13 vacancies in CIS's New York office. *See* Pl. Tr. at 104-05; MacPherson Decl. ¶ 23 and Ex. G (announcement) and Ex. H (plaintiff's Optional Form 612 and responses to job-specific questionnaire).

45. The SDAO position advertised in CIS-101146-NYC was a grade 13 position with no promotion potential beyond that grade. *See* MacPherson Decl. ¶ 24 and Ex. G at US 298.

46. Plaintiff was qualified for CIS-101146-NYC. *See* MacPherson Decl. ¶ 23 and Ex. G at US 299.

47. There were no interviews conducted in connection with CIS-101146-NYC, and there was no specialized education requirement associated with that announcement. *See* MacPherson Decl. ¶ 25 and Ex. G at US 299.

48. The three vacancies that were filled through CIS-101146-NYC were in sections headed by Stephen Rosina ("Rosina"), Section Chief, Adjustment of Status, and John Ryan ("Ryan"), Section Chief, Adjudications 2. *See* MacPherson Decl. ¶ 26.

8

49.    Initially, only two selections were made for CIS-101146-NYC as the third vacancy was not yet ready to be filled. *Id.*

50.    MacPherson initially selected Monica Toro ("Toro") and Nancy Faria ("Faria") for CIS-101146-NYC, followed by Terri Williams ("Williams") shortly thereafter. *Id.*; Pl. Tr. at 122-23.

51.    On December 22, 2005, Rosina recommended Toro for one of the permanent SDAO vacancies under CIS-101146-NYC based on the quality of Toro's work as a Temporary SDAO since September, 2005, including the influence she had on trainees under her charge. *See* MacPherson Decl. ¶ 27 and Ex. I (recommendation) and Ex. J (Toro's resume and responses to job-specific questionnaire).

52.    Based on Toro's supervisory experience in the section in which the vacancy was located, MacPherson concurred with Rosina's recommendation. *See* MacPherson Decl. ¶ 28.

53.    On December 27, 2005, MacPherson selected Toro for CIS-101146-NYC from Merit Promotion Certificate of Eligibles No. MB-06-REP-01176S0, which had issued on December 6, 2005. *See* MacPherson Decl. ¶ 28 and Ex. K (certificate reflecting selection).

54.    On December 22, 2005, Ryan recommended Faria for the position of SDAO in the Refugee and Parole Unit based on her "extensive knowledge of the work and personnel" in that Unit, which was the result of her having spent a few years in that Unit as a DAO as well as serving as Temporary SDAO there since July 2005. MacPherson Decl. ¶ 29 and Ex. L (recommendation) and Ex. M (Faria's resume) and Ex. N (Faria's responses to job-specific questionnaire).

55.     Faria was a grade 13 DAO with 18 years of experience with the agency and had served as SDAO from February 25, 2000, through February 27, 2001; a Temporary SDAO from July 10, 2005, through November 10, 2005; as well as an Acting Supervisory Asylum Officer, prior to applying to CIS-101146-NYC.  *See* MacPherson Decl. ¶ 30 and Ex. L, Ex. M at US 317-18, and Ex. N at 135-136.

56.     Based on Faria's extensive supervisory experience and prior experience in the section in which the vacancy existed, MacPherson concurred with Ryan's recommendation.  *See* MacPherson Decl. ¶ 31.

57.     On December 27, 2005, MacPherson selected Faria, who was already a permanent grade 13 DAO at the time of her application to 101146, from the Non-Traditional Certificate of Eligible No. MB-06-REP-01177S0, which had issued on December 6, 2005.  *See* MacPherson Decl. ¶ 31 and Ex. O (certificate).

58.     In December, 2005, plaintiff received an e-mail informing her of her non-selection for CIS- 101146-NYC, which was followed by a letter dated January 9, 2006.  *See* Pl. Tr. at 116-118.

59.     Initially, Williams, like plaintiff, was not selected for CIS-101146-NYC.  *See* MacPherson Decl. ¶ 32 and Ex. P (non-selection letter issued to Williams) and Ex. Q (non-selection letter issued to Charles) and Ex. S (certificate reflecting non-selection of Williams and Charles) at US 90.

60.     Shortly after Toro and Faria had been selected, Rosina had an additional vacancy in his section that was ready to be filled, and he was asked for another recommendation.  *See* MacPherson Decl. ¶ 33.

61.     On January 9, 2006, Rosina recommended that Williams be selected from the existing applicant pool for CIS-101146-NYC, but without providing the usual narrative explaining his selection.  *See* MacPherson Decl. ¶ 33 and Ex. T (recommendation); *see also* Merit Plan at US 2657.

62.     MacPherson agreed with Rosina's recommendation because she knew that Williams had been working in Rosina's section as a grade 13 Temporary SDAO since September, 2005, and already had supervisory experience in the very position to which she was selected MacPherson, and thus had no reason to disturb Rosina's determination of who would be best suited to join his section as SDAO.  *See* MacPherson Decl. ¶ 33 and Ex. R at US 228, 231-32.

63.     By letter dated December 30, 2005, to CIS Human Resources in Vermont, plaintiff requested, ostensibly pursuant to FOIA, information relating to CIS-101146-NYC.  *See* Pantoja Decl. Ex. 2  at US 2648.  By letter dated January 5, 2006, CIS acknowledged receipt of the December 30, 2005 request.  *See* Pantoja Decl. Ex. 3.

64.     By letter dated May 30, 2006, CIS produced responsive documents to plaintiff and advised her of her right to appeal CIS's response.  *See* Pantoja Decl. Ex. 4.

65.     Plaintiff received documents in response to her December 30, 2005 request, and plaintiff never appealed CIS's response to her FOIA request concerning CIS-101146-NYC.  *See* Pl. Tr. at 122, 156-159, 282-84.

66.     By letter dated June 26, 2006, to CIS Human Resources in Vermont, plaintiff requested additional information, to which CIS responded by e-mail dated August 11, 2006.  *See* Pantoja Decl. Exs. 5 and 6.

67.    In January, 2006, plaintiff applied to Vacancy Announcement No. CIS-103847-NYC ("CIS-103847-NYC"), which advertised one temporary SDAO GS-1801-13 vacancy in CIS's New York office.  *See* Pl. Tr. at 137-38; MacPherson Decl. ¶ 34 and Ex. U (announcement) and Ex.V (plaintiff's application materials).

68.    The SDAO position advertised in CIS-103847-NYC was a temporary grade 13 assignment not to exceed one year that could have been extended for one additional year, and it was located in the Non-Immigration Unit of the Adjudications 2 section, which was headed by Ryan.  *See* MacPherson Decl. ¶ 35 and Ex. U at US 81.

69.    There were no interviews conducted in connection with CIS-103847-NYC, and there was no specialized education requirement associated with that announcement.  *See* Ex. U at US 81-87.

70.    On February 6, 2006, Ryan recommended that Colvin Alman ("Alman") be selected as a Temporary SDAO in the Non-Immigration Unit, which was in Ryan's section.  *See* MacPherson Decl. ¶ 36 and Ex. W (recommendation) and Ex. X (Alman's resume).

71.    Based on, *inter alia*, Alman's experience in the Unit as a DAO, from 1998 to 2005, and a grade 13 Temporary SDAO since November, 2005, MacPherson concurred with Ryan's recommendation. *See* MacPherson Decl. ¶ 36.

72.    On February 8, 2006, MacPherson selected Alman for CIS-103847-NYC off of Merit Promotion Certificate of Eligibles MB-06-REP-01513S0, which had issued on February 2, 2006.  *See* MacPherson Decl. ¶ 36 and Ex. Y (certificate reflecting selection) at US 90.

73.    Plaintiff first learned of her non-selection for CIS-103847-NYC through an e-mail she received in January, 2006.  *See* Pl. Tr. at 147; MacPherson Decl. ¶ 37.

74.    Plaintiff also received a letter dated February 21, 2006, notifying her of her non-selection for CIS-103847-NYC.  Pl. Tr. at 146-147; MacPherson Decl. ¶ 37 and Ex. Z.

75.    Plaintiff did not make a FOIA request specific to CIS-103847-NYC.  *See* Pl. Tr. at 284.

76.    On June 26, 2006, plaintiff sought EEO counseling with respect to all three of her non-selections.  *See* Pl. Tr. at 208-09; *see also* Pantoja Decl. Ex. 7 (EEO Report) at US 6.

77.    During the counseling phase, plaintiff alleged that she had been discriminated against on the basis of national origin when she was not selected for FS330054, 101146, and 103847.  *See* Pantoja Decl. 7 at US 8.

78.    By letter dated September 5, 2006, plaintiff received notice of her right to file a written EEO complaint.  *See See* Pl. Tr. at 213; Pantoja Decl. Ex. 7 at US 11, 14-19.

79.    Plaintiff filed her EEO complaint on October 5, 2006, alleging discrimination on account of her national origin and race when she was not selected for FS330054, CIS-101146-NYC, and CIS-103847-NYC.  *See* Pantoja Decl. Ex. 8.

80.    By decision dated December 29, 2006, DHS denied plaintiff's EEO complaint, finding that her discrimination claims were untimely on account of her failure to contact an EEO counselor within 45 days of learning of the three non-selections.  *See* Pantoja Decl. Ex. 9.

81.    Plaintiff appealed to the EEOC, and the EEOC affirmed the DHS's decision on April 5, 2007.  *See* Pantoja Decl. Ex. 10.

82.    Plaintiff requested consideration of the EEOC's decision, and the EEOC denied that request in a decision dated June 19, 2007, which was mailed to plaintiff on that date, a Tuesday.  *See* Pantoja Decl. Ex. 11.

83.    The EEOC's decision advised plaintiff that she had "ninety (90) calendar days from the date that you receive this decision" to file a civil action. *Id.*

84.    Plaintiff filed this action on September 24, 2007, and amended her complaint on February 28, 2008.

By submitting this statement, defendants do not waive their right to contend that the above-referenced facts are not material to the present action.

Dated:  New York, New York
          June 4, 2008

                              Respectfully submitted,

                              MICHAEL J. GARCIA
                              United States Attorney for the
                              Southern District of New York
                              Attorney for Defendants


                                  /s/ Joseph A. Pantoja
                       By:    JOSEPH A. PANTOJA
                              Assistant United States Attorney
                              86 Chambers Street, 3rd Floor
                              New York, New York 10007
                              Tel.: (212) 637-2785
                              Fax: (212) 637-2750
                              E-mail: joseph.pantoja@usdoj.gov